UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| FRANCO MARINE 1, LLC., | ) | CASE NO.1:17CV2506 |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| GREAT LAKES TOWING CO. | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on a Motion to Dismiss by Defendant The Great Lakes Towing Company. (ECF # 5). For the following reasons, the Court grants Defendant's Motion and dismisses the above-captioned case.

According to Plaintiff, the Parties entered into a valid contract for the sale of a tugboat, which Defendant breached when it refused to close on the sale. Plaintiff also claims Promissory Fraud for Defendant's statement that it would sell the boat for $3 million, which Plaintiff alleges was made with no intent of following through with the sale. Lastly, Plaintiff claims Promissory Estoppel because Plaintiff relied on Defendant's $3 million offer in sending representatives to inspect the boat.

**Background Facts**

Plaintiff's claims concern the sale of a tugboat to Plaintiff Franco Marine 1, LLC by Defendant The Great Lakes Towing Company. Harley Franco ("Mr. Franco") is the Governor of Plaintiff Franco Marine 1, LLC and the Chairman and CEO of Harley Marine Services. Defendant's President Joseph Starck, Jr. ("Mr. Starck") emailed Mr. Franco advertising the tugboat San Jose (the "Tugboat") "available for immediate sale." Compl. Ex. A. When Mr. Franco indicated his interest in the Tugboat, Mr. Starck replied, "$3MM and it's yours." Compl. Ex. B. Mr. Franco responded by making arrangements to inspect the Tugboat. Later that day, Mr. Starck emailed Mr. Franco offering a charter arrangement:

> With regard to sale, we would prefer to do a short term charter, with purchase at the end of the charter. We propose a 6-month charter, with one (1) payment of $600,000 due on/before Delivery. Upon expiration of the charter, Harley will close on the purchase at a price of $2.50MM.

Compl. Ex. C. Mr. Franco sent employees to inspect the Tugboat, and about a week later, emailed Mr. Starck, purporting to accept Mr. Starck's offer:

> This will confirm that we have accepted your $3,000,000 offer to sell Harley Marine Services or Harley Franco LLC. To purchase the above reference tugboat. This will further confirm the vessel comes with spares listed and that all certifications are current. This will further confirm you will send us a signed purchase and sale agreement immediately. We will schedule a closing immediately.

Compl. Ex. E. Mr. Starck replied, "I will have the Purchase and Sale to you tomorrow." Compl. Ex. E. The next day, Mr. Starck emailed Mr. Franco with an unsigned copy of the Vessel Purchase and Sale Agreement, stating, "I have initialed each page, except the signature page. To be timely effectuated, we will require this agreement to be fully executed by 1700 Hours ET today. Upon receipt of your signed copy by return email, I will immediately sign and return the fully executed agreement to you." Compl. Ex. F. Forty minutes later, Mr.

2

Starck emailed Mr. Franco, "I have now been advised that acceptance of any Purchase and Sale Agreement by Great Lakes will be subject to prior review and approval by the Company's board of directors before I can sign." Compl. Ex. G. Mr. Franco signed the Agreement and sent it back to Mr. Starck. The next day, Mr. Franco emailed Mr. Starck, "Joe need signed agreement." Compl. Ex. J. Mr. Starck replied, "[t]his is to advise that our board did not approve the agreement to sell the tug to Harley Marine, and therefore we have no contract." Compl. Ex. J. Mr. Franco replied, "[w]e believe we have a contract, and now have damages." Compl. Ex. J. According to Plaintiff, Defendant sold the Tugboat to another party shortly after it refused to close on the deal with Plaintiff.

Plaintiff's Complaint alleges Breach of Contract for Defendant's failure to sell the Tugboat for $3 million, Promissory Fraud for Mr. Starck offering to sell the Tugboat when Mr. Starck had no intention of following through on the offer, and Promissory Estoppel for Plaintiff's reliance on Defendant's offer in sending representatives to inspect the Tugboat.

**Defendant's Motion**

Defendant argues that Plaintiff's Breach of Contract claim fails because there was no $3 million offer on the table for Mr. Franco to accept. The initial $3 million offer was revoked by Mr. Starck's subsequent offer of a charter arrangement with a final purchase price of $3.1 million. If Mr. Franco's purported acceptance was a counteroffer, Defendant argues it would be unreasonable to construe Mr. Starck's statement that he would send a Purchase and Sale contract the next day as an acceptance. There was no meeting of the minds because both parties required a formal writing to be bound; Defendant stated that the contract would not be effectuated until it was signed, and Plaintiff refused to wire money until there was a signed,

3

written contract. Furthermore, Defendant argues that the agreement was indefinite as to the essential terms of price ($3 million vs. $3.1 million), down payment (no down payment vs. $300,000 vs. $600,000) and party (Harley Marine Services vs. Franco Marine 1, LLC).

Defendant also argues that Plaintiff has failed to state a claim for Promissory Fraud because Plaintiff has not adequately and plausibly stated that any promise made by Defendant was false when made. To the extent that Plaintiff argues that the false promise was Mr. Starck's initial offer to sell the Tugboat for $3 million, Defendant claims that this is not an actionable false promise because the offer was rescinded later that day and prior to Plaintiff's purported acceptance. According to Defendant, even if Mr. Starck's subsequent offer was not a revocation, Plaintiff still cannot claim reasonable reliance because the parties stated they would not be bound unless they signed a formal contract. Furthermore, any reliance on Mr. Starck's email statements by Plaintiff would be unreasonable *per se* because the parties are sophisticated businesses negotiating a multimillion dollar sale. Finally, Defendant argues that reliance on the offer would be unreasonable because Defendant could have withdrawn the offer at any time.

Lastly, Defendant argues that Plaintiff's Promissory Estoppel claim also fails because it could not have reasonably relied on Mr. Starck's statements for the reasons discussed in the previous paragraph. Furthermore, Defendant argues that Plaintiff was not injured by its reliance because Plaintiff arranged for inspection of the Tugboat without any formal agreement that the sale would be finalized if no issues were uncovered during inspection.

**Plaintiff's Response**

Plaintiff argues that Defendant's initial $3 million offer was not revoked when Mr.

4

Starck proposed the charter agreement with a final sale price of $3.1 million because this later email was only an expression of Defendant's preferences regarding payment schedule and structure of the deal, not another offer. If the Court finds that Mr. Starck's subsequent statements were a revocation of his $3 million offer, Plaintiff claims Mr. Franco's email purporting to accept Plaintiff's offer to sell the Tugboat for $3 million constituted an offer, which Mr. Starck accepted by saying, "I will have the Purchase and Sale to you tomorrow." Furthermore, Plaintiff argues that the parties never conditioned their deal on a final written contract and only sought to memorialize their deal with the Purchase and Sale Agreement. There was agreement to the essential terms of the contract and the disparity in purchaser (Harvey Marine Services vs. Franco Marine 1, LLC) is immaterial because Franco Marine 1, LLC is a wholly owned subsidiary of Harley Marine Services.

If the Court finds that it did not sufficiently plead its Promissory Fraud claim, Plaintiff argues that dismissal would be improper and the Court should grant leave to amend the Complaint. While Plaintiff concedes that it may be *per se* unreasonable for a party to rely on a statement of future intent in a complex business transaction, Plaintiff contends that this agreement is not complex but rather a straightforward sale. Furthermore, Plaintiff argues that Defendant's ability to withdraw its offer has no bearing on this case because Defendant did not in fact withdraw the offer prior to acceptance, or if it did, it accepted Plaintiff's counteroffer.

Lastly, Plaintiff argues that it has sufficiently pleaded its claim for Promissory Estoppel. Plaintiff asserts that Mr. Starck made a clear and unambiguous promise to sell the Tugboat for $3 million, which Plaintiff reasonably relied on in sending employees to inspect

the Tugboat. Furthermore, Plaintiff argues that Defendant's argument that Plaintiff could not have reasonably relied on a revocable offer would allow only plaintiffs with an option contract to bring a claim for promissory estoppel and that this would be unreasonable.

## LAW AND ANALYSIS

### Standard of Review

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). The United States Supreme Court, in *Ashcroft v. Iqbal*, 566 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusion, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 1950.

When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case,

and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

**Was there an enforceable contract between the parties for the sale of the Tugboat?**

"Under Ohio law, the elements for breach of contract are: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff." *MMK Group, LLC v. SheShells Co., LLC*, 591 F.Supp.2d 944, 963 (N.D.Ohio 2008). In order to show the existence of a valid contract, the plaintiff must show "the essential elements of a contract, including an offer, acceptance, the manifestation of mutual assent, and 'consideration (the bargained for legal benefit and/or detriment).'" *Id.*, citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 3 (1991). "The plaintiff must also show that there was a 'meeting of the minds' and that the contract was definite as to its essential terms." *Id.*, citing *Episcopal Ret. Homes, Inc. v. Ohio Dep't of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991).

Plaintiff and Defendant disagree about the existence of a valid contract. Therefore, the Court must first determine whether there was a legally enforceable contract in order to decide on the issue of Breach of Contract.

"Ohio courts define an offer as a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Babcock & Wilcox Co. v. Hitachi America, Ltd.*, 406 F.Supp.2d 819, 827 (N.D.Ohio 2005) (quoting Restatement (Second) of Contracts §24 (1981)). Generally, "an offer may be withdrawn at any time before it is accepted." *Ohio Title Corp. v. Pingue*,

No. 10AP-1010, 2012 WL 1077193, at *10 (Ohio Ct. App. 10th Dist. Mar. 29, 2012).

While Defendant concedes that Mr. Starck's email which said "$3MM and it's yours" was an offer, Defendant argues that this offer was revoked prior to acceptance. Compl. Ex. B. Shortly after Mr. Starck sent that email, he sent another email "propos[ing]... a 6-month charter, with one (1) payment of $600,000 due on/before Delivery... [and] purchase at a price of $2.50MM." Compl. Ex. C. Defendant maintains that this was a second offer, which revoked the first $3 million offer. Plaintiff emphasizes the use of the word "propose" and claims that Mr. Starck's email merely reflected Defendant's preferences regarding how the deal was to be carried out and was not a second offer. Plaintiff's argument that this "propos[al]" was not a new offer goes against the common usage of the word "propose." Plaintiff has not cited any authority that holds that a "proposal" is different than an "offer." Furthermore, this proposal changed an essential term of the initial offer; it contemplated a final purchase price of $3.1 million. Thus, the Court finds that Mr. Starck's charter agreement proposal was a subsequent offer which terminated Plaintiff's power to accept the first $3 million straight-sale offer.

Plaintiff argues that if Mr. Starck's second email revoked his first offer, Mr. Franco's subsequent email purporting to accept Mr. Starck's $3 million straight sale offer is a counter-offer. However, even if Mr. Franco's purported acceptance were a counter-offer, it was never accepted by Defendant. "Unless otherwise unambiguously indicated by the language or circumstances," Ohio law construes "an offer to make a contract... as inviting acceptance in any manner and by any medium reasonable in the circumstance." Ohio Rev. Code §1302.09 (2018). The Tenth Circuit Court of Appeals held that a purchase order which stated that it

8

was "subject to acceptance by Seller... (and) Seller shall mail to Purchaser a signed duplicate copy hereof" unambiguously indicated that the only proper manner of acceptance was sending a signed copy of the agreement. *See Southwestern Stationery & Bank Supply, Inc. v. Harris Corp.*, 624 F.2d 168, 169-171 (10th Cir. 1980). Furthermore, "[i]n Ohio, when parties intend that their agreement shall be reduced to writing and signed, no contract exists until the written agreement is executed." *Curry v. Nestle USA, Inc.*, No. 99-3877, 2000 WL 1091490, at *7 (6th Cir. July 27, 2000) (holding that an oral agreement was not enforceable when one party stated, "I will have Jack Wyatt draw up an agreement").

Here, the language used in Plaintiff's counter-offer was substantially similar to the language used in the *Southwestern Stationery* case. Plaintiff stated, "[t]his will further confirm you will send us a signed purchase and sale agreement immediately." Compl. Ex. E. In light of this statement, the only proper manner of acceptance invited by Plaintiff's counter-offer was sending a signed purchase and sale agreement. Accordingly, because Defendant never sent a *signed* purchase and sale agreement, Defendant never accepted Plaintiff's offer.

In this case, as in *Curry,* the parties intended their agreement to be reduced to a signed writing. This is evidenced by Mr. Franco's offer which invited a signed contract as the only proper form of acceptance; Mr. Starck's reply, which stated, "To be timely effectuated, we will *require* this agreement to be fully executed by 1700 Hours ET today" (emphasis added); and a subsequent statement by Mr. Franco that he "*need[s]* signed agreement" (emphasis added). Compl. Ex. F; Ex. J. This language is more definite than the language used in the *Curry* case, where the court still found that the parties required a signed agreement to be bound. Therefore, because both parties never mutually signed a written agreement, the Court

9

finds that there was no manifestation of mutual assent.

Furthermore, Plaintiff has failed to show a meeting of the minds as to essential contract terms. "An enforceable contract must be 'specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term.'" *GEM Indus. v. Sun Trust Bank*, 700 F.Supp.2d 915, 921 (N.D.Ohio 2010). "If the parties' manifestations taken together as making up the contract, when reasonably interpreted in light of all the circumstances, do not enable the court to determine what the agreement is and to enforce it without, in effect, 'making a contract for the parties,' no enforceable obligation results." *Id.* The Ohio Court of Appeals has held that there is no meeting of the minds as to essential terms of a contract when the agreement did not include the amount of down-payment and financing terms. *See Riolo v. Oakwood Plaza Ltd. P'ship*, No. 04CA008555, 2005 WL 1026592, at *2 (Ohio Ct. App. May 4, 2005).

Here, Plaintiff claims that there was a meeting of the minds as to essential contract terms when Mr. Franco purported to accept Mr. Starck's $3 million offer because the unsigned purchase and sale agreement that Mr. Starck sent to Mr. Franco the next day also reflected a purchase price of $3 million. However, this agreement provided for a $300,000 down payment, which was not mentioned in Mr. Franco's email or in any previous emails between the parties. While Mr. Starck suggested a down payment twice, Mr. Franco never agreed to a down payment in any of his emails. Therefore, there was no meeting of the minds as to essential terms, including the down payment, with the structure of the deal being up in the air.

Because there is no contract between the parties, the Court dismisses Plaintiff's

Breach of Contract claim.

**<u>Did Plaintiff sufficiently plead its promissory fraud claim?</u>**

In order to state a claim for promissory fraud, a plaintiff must plead the following elements:

> (a) a representation * * * of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Chem. Bank of New York v. Neman*, 52 Ohio St.3d 204, 208 (1990). Federal Rule of Civil Procedure 9(b) requires the plaintiff: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Vandenheede v. Vecchio*, 541 Fed. Appx. 577, 579 (6th Cir. 2013). Generally, "a claim of fraud cannot be predicated upon promises or representations relating to future actions or conduct," but there is an exception to this general rule when a person "who makes his promise of future action, occurrence, or conduct, and who *at the time he makes it*, has no intention of keeping his promise." (Emphasis original). *Rodgers v. Custom Coach Corp.*, No. 99AP-1167, 2000 WL 796591 (Ohio Ct. App. 10th Dist. June 22, 2000).

Plaintiff argues that "[w]hen... Mr. Starck made the promise to sell the SAN JOSE to Plaintiff, he had no present intention of having the Defendant follow through on the sale." Compl. ¶ 43. However, Plaintiff has not explained what made the statements fraudulent and has not sufficiently alleged that Mr. Starck did not intend to follow through with the $3

11

million offer when made. Plaintiff merely asserts that Defendant later sold the Tugboat to a third party.

Furthermore, Defendant argues that any reliance on the email statement would be *per se* unreasonable because the parties are sophisticated businesses negotiating a complex deal and because contractual offers, by nature, can be withdrawn at will. In *Salyers v. Brennan Builders, Inc.*, No. 1:13CV392, 2015 WL 1286011, at *13 (S.D.Ohio Mar. 18, 2015), the Court held that "reliance on a statement of future intent made prior to the conclusion of negotiations in a complex business transaction is unreasonable as a matter of law." Plaintiff concedes (at 17) that "it may be *per se* unreasonable for a party to rely on a statement of future intent in *complex* business transactions" (emphasis original), but argues that this transaction is "simply not that complex." Plaintiff attempts to distinguish *Salyers* (at 17) because it "involved a job offer... the plaintiff and his family moving... the eventual transfer of the entire business to Plaintiff after the formation of a new business entity, as well as a number of unknown variables." However, the Tugboat sale also involves "a number of unknown variables," such as the amount of down payment, the structure of the deal (charter agreement vs. straight sale), and the need to move the Tugboat from Cleveland to New York. The Tugboat agreement is thus comparable to the agreement in *Salyers* and the Court holds that Plaintiff could not have reasonably relied on Defendant's initial offer as a sophisticated business negotiating a complex, multimillion dollar sale agreement. Therefore, the Court dismisses Plaintiff's Promissory Fraud claim.

**Has Plaintiff stated a claim for promissory estoppel?**

"To demonstrate promissory estoppel, the plaintiff must establish: '1) a promise, clear

and unambiguous in its terms; 2) reasonable and foreseeable reliance; and 3) injury resulting from the reliance.'" *Andersons, Inc. v. Consol, Inc.*, 185 F.Supp.2d 833, 839 (N.D.Ohio 2001). For the same reasons Plaintiff's promissory fraud claim fails, so too does its promissory estoppel claim. Plaintiff cannot have reasonably and foreseeably relied on Defendant's initial offer as a sophisticated party negotiating a multimillion dollar contract. Furthermore, "[t]o be 'clear and unambiguous,' the promise cannot be conditional." *Id*. at 840. Here, there was no clear and unambiguous promise because the "promise" was conditioned on the parties executing a final, written agreement (as discussed above with regard to breach). Furthermore, Plaintiff also claims that the "promise" was Mr. Starck's statement that he would send a signed agreement and close the sale; however, that statement was also conditional because Mr. Starck told Mr. Franco that his final signature would be subject to board approval. Thus, the Court dismisses Plaintiff's Promissory Estoppel claim.

Therefore, for the foregoing reasons, the Court grants Defendant The Great Lakes Towing Company's Motion to Dismiss.

IT IS SO ORDERED.

        s/ Christopher A. Boyko
        CHRISTOPHER A. BOYKO
        United States District Judge

Dated: June 14, 2018